IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRAVELERS LLOYDS INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-05-2853 |
| PACIFIC EMPLOYERS INSURANCE COMPANY and BEST BUY STORES, L.P., | § § § § | |
| Defendants. | § § | |

MEMORANDUM AND ORDER

Pending is Defendant Pacific Employers Insurance Company's Motion for Summary Judgment (Document No. 26), and Plaintiff Travelers Lloyds Insurance Company's Cross-Motion for Summary Judgment (Document No. 41). After having considered the motions, responses, and the applicable law, the Court concludes for the reasons set forth below that Plaintiff's Cross-Motion for Summary Judgment Motion should be granted, and Defendant's Motion for Summary Judgment should be denied.

I.  Background

Plaintiff Travelers Lloyds Insurance Company ("Travelers") seeks recovery from Defendants Pacific Employers Insurance Company ("Pacific Employers") and Best Buy Stores, L.P. ("Best Buy") of its costs in defending and settling claims asserted against its insured, The Centre at Bunker Hill, Ltd. ("The Centre"), in an

underlying state court negligence action.  Travelers contends that, for purposes of the underlying action, The Centre is an additional insured under an insurance policy that Pacific Employers issued to Best Buy, and that the Pacific Employers policy is primary to a policy that Travelers issued to The Centre.

<u>The Lease Agreement</u>

In October, 2000, The Centre, acting as landlord, and Best Buy, as tenant, entered into a lease agreement (the "Agreement") with respect to a Best Buy store that was being built on property developed and managed by The Centre.  Article 22 of the Agreement, entitled "Insurance and Indemnity," provided as follows:

**22.    INSURANCE AND INDEMNITY**

**22.1  Tenant's Insurance**.  Tenant shall obtain and keep in force at Tenant's expenses from and after the Delivery Date through the expiration of the Lease Term commercial general liability insurance with a combined single limit of Five Million and No/100 Dollars ($5,000,000.00) for each occurrence (including coverage under so-called "umbrella" or "excess liability" policies).  Said insurance shall name Tenant as named insured and Landlord as additional insured. . . . Tenant may self-insure all or any part of the insurance it is required to carry hereunder, provided that Tenant or Guarantor maintains a minimum net worth of at least $100,000,000.00, and/or Tenant may carry such insurance under a "blanket" policy.

**22.2 Landlord's Insurance.**

* * *

**22.3**  Tenant shall indemnify and hold Landlord and Landlord's agents harmless from and against any and all claims, actions, demands, liens, costs, damages, expenses

2

and liabilities whatsoever including, but not limited to, attorneys' fees and court costs, arising out of any claims of any person or persons on account of or by reason of: (a) any occurrence in, on or about the Premises from the Delivery Date until Tenant fully vacates the Premises resulting from the occupancy or use thereof; (b) the negligence or willful misconduct of Tenant, its agents, employees and contractors in, on or about the Premises and/or Shopping Center; (c) any default by Tenant hereunder; (d) any violation of any environmental law by Tenant, its agents, employees or contractors; (e) the release or disposal of any hazardous substance in, on, under or about the Premises or Shopping Center by Tenant, its agents, employees and contractors; and/or (f) any liens asserted against the Premises and/or the Shopping Center under contracts entered into by or under Tenant.  This Section shall survive the termination of this Lease.

**22.4 [Landlord's indemnity clause].**

* * *

Document No. 26 ex. D art. 22.

<u>Best Buy's Insurance</u>

Best Buy procured from Pacific Employers a one-year "Excess Commercial General Liability Policy," policy number XSL-G20580458, with an effective date of March 1, 2002 (the "Pacific Employers Policy").[1]  The policy provided for coverage with a per occurrence

---

[1] The Policy evidently was issued as an "Excess" Commercial General Liability Policy only because Best Buy had a $200,000 "self-insured" retention.  There is no specified underlying primary liability policy.  "[P]roperly viewed, a self-insured rentention does not constitute insurance . . . . [Instead] (like a deductible) [it] represents the amount of the loss that the insured is responsible for before the coverage is triggered."  1 ALLAN D. WINDT, INS. CLAIMS & DISPUTES § 11.31, at 348-50 (3d ed. 1995).  *See also* <u>Vesta Ins. Co. v. Amoco Prod. Co.</u>, 986 F.2d 981, 986 (5th Cir.

limit of $1,000,000, and a general aggregate limit of $2,000,000, subject to a self-insured retention of $200,000.  The policy contained an endorsement (the "Additional Insured Endorsement") extending "additional insured" coverage to persons or organizations "[w]here required by written contract before the date of loss. . . . but only with respect to liability arising out of [Best Buy's] operations or premises owned or rented by [Best Buy]."

## The Underlying Lawsuit

On June 23, 2002, Scott Schneider ("Schneider"), who was confined to a wheelchair, was injured while exiting the Best Buy store in question.[2]  Schneider, along with his wife and daughter, sued The Centre, Best Buy, and others in state court, Scott

---

1993) ("Insurance is defined as a 'contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils'") (quoting BLACK'S LAW DICTIONARY 802 (6th ed. 1990)).

[2] In his Fourth Amended Petition, Schneider alleges:

. . . Plaintiff and his daughter, ELIZABETH SCHNEIDER, a bystander, were negligently directed to exit the store through a door located next to the installation bays.  When the door was opened, the door blocked the sidewalks and there was a yellow bollard in front of the opened door.  When Mr. Schneider turned left to get around the bollard, his wheelchair struck a raised yellow curb which was alongside of yellow striping in the parking lot.  This impact caused Mr. Schneider to be thrown out of his wheelchair seriously injuring his femurs and his hips.

Document No. 40 app. 3 ¶ 6.

Schneider, et al. v. Best Buy Co., Inc., et al., Cause No.
2003-04887 (the "Underlying Action"), alleging that numerous
negligent acts and omissions of the several defendants proximately
caused the accident and his injuries. *See* Document No. 40 app. 3
at 5.  Among other things, Schneider contended that "the manner in
which the exit door, exit ramp, curb and sidewalk were constructed,
as well as the yellow striping along side of the curb, constituted
a dangerous condition which posed an unreasonable risk of harm to
Plaintiff and other customers." Id. ¶ 6.

The Centre's Insurance and the Settlement

The Centre was insured under a comprehensive general liability
policy issued by Travelers (the "Travelers Policy").  By letter
dated April 19, 2005 (which supplemented previous demands),
Travelers demanded that Best Buy and Pacific Employers assume The
Centre's defense in the Underlying Action and indemnify The Centre
against further exposure in the matter, on the ground that The
Centre is an additional insured under the Pacific Employers Policy.
*See* Document No. 40 app. 1 ¶ 4 & ex. B at 2, 6.  Pacific Employers
and Best Buy declined to do so.  Travelers later paid $250,000 to
settle claims against The Centre in the Underlying Action and has
incurred more than $273,000 in attorneys' fees and expenses. *See*
id. ¶¶ 5-6.  Travelers seeks declarations that, *inter alia*,
(1) Pacific Employers must defend and indemnify The Centre against

claims made in the Underlying Action; and (2) Travelers is entitled to "reimbursement for defense costs incurred in defending [The] Centre to date and . . . protection and indemnity against any further exposure or expense in the [Underlying Action]." *See* Document No. 1 at 5-6.[3]  Pacific Employers moves for summary judgment on grounds that (1) The Centre is not an additional insured under the Pacific Employers Policy because the additional insured requirement exists solely to support the indemnity provision, which The Centre cannot enforce because of Texas's express negligence doctrine; (2) even if The Centre were an additional insured, the Pacific Employers Policy is excess to the Travelers Policy, which is The Centre's primary liability policy; and (3) even assuming the two policies share on a primary basis, (a) Travelers is entitled to recover, "at best," a "prorated share of the $50,000 settlement amount which is over above the [$200,000 self insured retention" that Best Buy must satisfy under the Pacific Employers Policy, and (b) Travelers is not entitled to recover defense costs because the Pacific Employers Policy does not contain a defense obligation.  *See* Document No. 26 ¶¶ 32-35.

---

[3]     Travelers also seeks a declaration that "Best Buy is obligated to pay any Self-Insured Retention under the [Pacific Employers] policy . . ."  *See* Document No. 1 at 6.  At oral arguments on the cross motions for summary judgment, the respective counsel for both Best Buy and Pacific Employers represented and agreed that Best Buy has now fully satisfied the $200,000 self-insured retention for this occurrence, and no issue therefore remains with regard to the self-insured retention.

Travelers's cross-motion for partial summary judgment asserts that (1) The Centre is an additional insured under Pacific Employers Policy, and (2) the Travelers Policy is excess to the Pacific Employers Policy, and therefore Pacific Employers is required as a matter of law to reimburse Travelers for amounts paid to defend and settle claims against The Centre in the Underlying Action.  *See* Document No. 40 at 4, 33-34.

## II.  <u>Standards of Review</u>

### A.  <u>Summary Judgment</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  *See* <u>id.</u> at 2553-54.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *See* <u>Morris v. Covan World Wide Moving, Inc.</u>, 144

F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)).  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden.  *See* Anderson, 106 S. Ct. at 2513-14.  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id. (citing Anderson, 106 S. Ct. at 2511).  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

B.   Texas Insurance Law and Rules of Contract Interpretation

The parties are agreed that Texas law applies.  *See, e.g.,* Cleere Drilling Co. v. Dominion Exploration & Prod., Inc., 351 F.3d

642, 646 (5th Cir. 2003).   In Texas, insurance policies and indemnity agreements are interpreted using the rules governing contract interpretation.   *See* <u>Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.</u>, 359 F.3d 770, 773 (5th Cir. 2004); <u>Gulf Ins. Co. v. Burns Motors, Inc.</u>, 22 S.W.3d 417, 423 (Tex. 2000). The primary goal is to ascertain the true intent of the parties as expressed in the instrument.   *See* <u>Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.</u>, 907 S.W.2d 517, 520 (Tex. 1995).   "To achieve this objective, we consider the contract as a whole."   <u>Schneider Nat'l Transport v. Ford Motor Co.</u>, 280 F.3d 532, 537 (5th Cir. 2002). The court cannot look to parol evidence to determine the meaning of a contract unless the court first determines that the contract is ambiguous.   *See* <u>Nat'l Union Fire</u>, 907 S.W.2d at 520.   Language in a policy or contract is ambiguous only if it is subject to two or more reasonable interpretations.   *See* <u>id.</u>   *See also* <u>Glover v. Nat'l Ins. Underwriters</u>, 545 S.W.2d 755, 761 (Tex. 1977); <u>Coker v. Coker</u>, 650 S.W.2d 391, 393 (Tex. 1983).   In Texas, if an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern.   *See* <u>Mid-Continent Cas. Co. v. Swift Energy Co.</u>, 206 F.3d 487, 491 (5th Cir. 2000).   On the other hand, if a contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous and the court should construe the contract as a matter of law.   *See* <u>Coker</u>, 650 S.W.2d at 393; <u>Gulf Ins. Co.</u>, 22 S.W.3d at 423.   When construing an

9

unambiguous instrument, the court should give terms their "plain, ordinary, and generally accepted meaning," and the court should attempt to give effect to all contract provisions so that none will be rendered meaningless.  *See* Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998) (quoting Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)).

## III.  Discussion

A.   Whether The Centre Is An Additional Insured Under the Pacific Employers Policy

The Additional Insured Endorsement of the Pacific Employers Policy provides that additional insured coverage exists only "[w]here required by written contract before the date of loss." *See* Document No. 40 app. 11 at PEIC 0214.[4]  The parties dispute whether the Lease Agreement obligated Best Buy to provide additional insured coverage to The Centre for The Centre's own negligence.   Pacific Employers argues that Best Buy was not contractually obligated to do so because the Lease's additional insured requirement exists solely to support the Lease's indemnity

---

[4] The Additional Insured Endorsement provides that, "[w]here required by written contract before the date of loss," "Who Is An Insured" is amended to include, *inter alia*, the "organization(s) shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned or rented by you." *See* Document No. 40 app. 11 at PEIC 0214.  It is undisputed that Schneider's claims in the Underlying Action "aris[e] out of [Best Buy's] operations or premises owned or rented by [Best Buy]."

provision, which fails to comply with the Texas express negligence doctrine.  Travelers responds that the additional insured require-ment is separate and distinct from the flawed indemnity provision and, therefore, Best Buy was required to name The Centre as an additional insured apart from and regardless of the indemnity provision.

In Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987), the Texas Supreme Court adopted the express negligence doctrine, which requires that parties seeking to indemnify an indemnitee for the consequences of the indemnitee's own negligence, which proximately causes injury either separately or jointly and concurrently with the indemnitor's negligence, must expressly state that intention within the four corners of their contract.  If that intention is not expressly stated in the contract, then an indemnitee may not enforce the indemnification clause to hold an indemnitor liable for injuries and damages sustained as a result of the indemnitee's negligence.  In Getty Oil Co. v. Ins. Co. of N. Am., 845 S.W.2d 794 (Tex. 1992), the Texas Supreme Court declined to extend the express negligence doctrine to insurance procurement provisions unless the insurance is intended only to "directly support" the performance of the indemnity.  See id. at 805-06. There, Getty Oil sued an insurance company on grounds of a contract provision requiring NL Industries to purchase liability insurance for Getty Oil.  The trial court rendered summary judgment against

Getty Oil after finding that the insurance requirement was facially invalid because (1) it made NL Industries indemnify Getty Oil for Getty Oil's own negligence, which was forbidden by the Texas Oilfield Anti-Indemnity Act; and (2) it failed to comply with the Texas express negligence doctrine (a doctrine, the trial court reasoned, that Texas courts "undoubtedly" would extend to insurance provisions covering the unenforceable indemnity obligation). *See* id. at 803-06.  The Texas Supreme Court reversed, holding that the Anti-Indemnity Act and the express negligence doctrine applied only to indemnity agreements and did not apply to agreements for the purchase of insurance unless the insurance was only to support the performance of the indemnity.  Thus, the Court held, where an additional insured provision of a contract "does not support the indemnity agreement, but rather is a separate obligation," the separate insurance obligation will not be invalidated by either the Anti-Indemnity Act or the express negligence doctrine.  *See* id. at 804-06.

The Fifth Circuit has liberally interpreted and applied Getty Oil to enforce insurance provisions notwithstanding indemnity provisions in the same contract that are void.  Thus, even when a contract specifically required an insurance policy to provide that the indemnitee is "additional insured for all coverages, *to the extent of the indemnity*," the Fifth Circuit upheld the validity of the insurance notwithstanding the invalidity of the indemnity

12

clause.  *See* <u>Certain Underwriters at Lloyd's London v. Oryx Energy Co.</u>, 142 F.3d 255, 258-60 (5th Cir. 1998) (emphasis added). Beginning with the premise that "we would not expect insurance covering an insured for liability due to his negligence to violate a state law or policy, regardless of which party pays the premium," the Fifth Circuit went on to conclude that Oryx was an "additional insured" regardless of the unenforceable indemnity obligation, because "there is no justification for an argument that Texas courts would engraft a limit on coverage to match the Texas law defense as if the suit were only to enforce the indemnity itself." *See* <u>Oryx</u>, 142 F.3d at 258; *see also* <u>Mid-Continent Casualty Co. v. Swift Energy Co.</u>, 206 F.3d 487, 494 n.8 (5th Cir. 2000) (assuming that the Contractor's indemnity obligation was invalid under the Texas Oilfield Anti-Indemnity Act, the contract's additional requirement that Swift be named "an additional insured, for liabilities and indemnities assumed by Contractor" would nonetheless be valid, and the Policy's "additional insured" coverage for Swift--which was required by the contract--was enforceable.  "Under *Getty* and *Oryx*, the 'additional insured' provision of the Policy would not be invalidated by the TOAIA even if we found that the [indemnity contract] was invalid.").[5]

---

[5] One law review article has criticized the Fifth Circuit's holding in these cases as appearing "to ignore Texas law that an invalid indemnity requires a court to scrutinize the insurance obligation to determine whether it stands on its own."  Julia M. Adams & Karen K. Milhollin, <u>Indemnity on the Outer Continental</u>

These Fifth Circuit precedents control the decision of this Court.  *See* LaFarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 402-403 (5th Cir. 1995) (reversing district court for not adhering to Fifth Circuit precedent requiring denial of attorneys' fees under Texas statute notwithstanding numerous Texas appellate court decisions assuming that attorneys' fees are recoverable under the statute).  Here, the indemnity clause in Best Buy's lease is void or invalid under the Texas express negligence doctrine. Nonetheless, the contract's requirement for Best Buy to obtain and keep in force certain insurance and to name The Centre as an additional insured is valid and enforceable under the Fifth Circuit's holding that "there is no justification . . . [to] engraft a limit on coverage to match the Texas law defense as if the suit were only to enforce the indemnity itself." Id. (*quoting* Oryx, 142 F.3d at 258).  This conclusion is all the more compelling here, where the separate insurance (Art. 22.1) and indemnity (Art. 22.3) clauses do not reference each other, are not intertwined or interrelated, and on their face stand independently as separate obligations in the Lease Agreement.[6]  Thus, the Court finds that

_____

Shelf--A Practical Primer, 27 Tul. Mar. L.J. 43, 88 (2002).  The authors describe the Fifth Circuit rule as being "The Insurance Is Always Separately Enforceable," concluding that "if your case is in federal court, it is likely that the court will enforce insurance obligations regardless of whether the indemnity is void." Id. at 86, 88.

[6] Although both provisions are contained in Article 22, entitled "Insurance and Indemnity," the separate clauses themselves

the additional insured provision in Article 22.1 is a separate obligation not invalidated by the indemnity provision even though the latter is void due to the express negligence doctrine. Accordingly, Best Buy was contractually obligated under Article 22.1 of the Lease Agreement to make The Centre an additional insured under its CGL policy.  Because the Additional Insured Endorsement in the Pacific Employers Policy extends additional insured status to organizations where the named insured, Best Buy, is obligated by written contract before the date of loss to provide such coverage, which Best Buy was required to do for The Centre, The Centre is an additional insured under the Pacific Employers Policy for purposes of the Underlying Action.

B.    Priority of Insurance

The parties dispute the priority of coverage between the Pacific Employers Policy and the Travelers Policy with respect to the claims against The Centre.  When multiple policies apply to a loss, the "other insurance" clauses of the insurance contracts determine how liability is to be apportioned between insurers.  *See* Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau, No. Civ.A 3:04-CV-1762B, 2006 WL 453235, at *12, *14 (N.D. Tex. Feb. 24,

---

do not reference each other, and the Lease specifically provides that "[t]he headings of the Articles of this Lease are for convenience of reference only and . . . shall not be interpreted or construed to modify, limit, or amplify the intent of such Articles."  *See* Document No. 26 ex. D ¶¶ 22, 37.6.

2006; *see also* <u>St. Paul Mercury Ins. Co. v. Lexington Ins. Co.</u>, 78 F.3d 202, 206 (5th Cir. 1996).  Both policies in this case contain "other insurance" clauses.  When insurance policies contain competing "other insurance" clauses, the court must examine the policies to determine whether the clauses "conflict or can be harmonized."  *See, e.g.,* <u>Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.</u>, 444 S.W.2d 583, 584-85 (Tex. 1969) (court must consider "whether the two restrictive provisions conflict, and if so, how the conflict should be resolved."); <u>U.S. Fire Ins. Co. v. Aetna Cas. & Sur. Co.</u>, 781 S.W.2d 394, 396 (Tex. App.––Houston [1st Dist.] 1989, no writ); *see also* 1 ALLAN D. WINDT, INS. CLAIMS & DISPUTES § 7.1 (4th ed. 2001) (where there are competing other insurance clauses, the first question is "whether the clauses are contradictory").

The Pacific Employers Policy issued to Best Buy and on which The Centre is an additional insured, contains the following "Other Insurance" clause:

4.   Other Insurance

If other insurance is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance, *unless that insurance is written specifically to apply in excess of the Limits of Insurance shown in the Declarations.*

16

Document No. 26 ex. B at 10 (emphasis added).  The Travelers Policy issued to The Centre includes an endorsement modifying the "other insurance" clause, which reads as follows:

**4.   Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.   Primary Insurance**

This insurance is primary except when b. below applies. . . .

**b.   Excess Insurance**

*This insurance is excess over any of the other insurance*; whether *primary, excess*, contingent or on any other basis:

. . .

(4)  That is valid and collectible insurance available to you [The Centre] *if you are added as an additional insured under any other policy.*

*See* Document No. 40 app. 1 ex. A at Travelers 00093-94, 00106 (emphases added).

Reading together both policies, the Pacific Employers Policy states that it is excess "unless [the other] insurance is written specifically to apply in excess of the Limits shown in the Declarations."  The Travelers Policy fits that exception:  it is written specifically to apply in excess over any other insurance

("whether primary, excess, contingent or on any other basis") that is valid and collectible insurance to The Centre "if [The Centre] is added as an additional insured under any other policy."  As observed above, The Centre was added as an "additional insured" under the Pacific Employers Policy, and the Travelers Policy is therefore excess to the limits of insurance provided for The Centre by the Pacific Employers Policy.  The "other insurance" clauses of the two policies are not in conflict.[7]

Accordingly, the Pacific Employers Policy is primary and provides coverage on the underlying loss liability up to $1,000,000

---

[7] Pacific Employers cites <u>Liberty Mut. Ins. Co. v. U.S. Life Ins. Co.</u>, 590 S.W.2d 783, 785 (Tex. App.--Houston [14th Dist.] 1979, writ ref'd n.r.e.) for the proposition that "[w]here there is apparent conflict between clauses of applicable insurance policies, courts should look to the overall pattern of insurance coverage to resolve disputes among the carriers." *See* Document No. 26 at 9. As such, Pacific Employers asserts, the Court should consider that the Pacific Employers Policy generally acts as "excess" to the self-insured retention, while the Travelers Policy is "a pure primary general liability policy" that is "not subject to a self insured retention" and is therefore intended to provide coverage "from the first dollar . . ." *See* <u>id.</u> at 8-9.  Pacific Employers argues that, under these circumstances, "courts have held that the excess policy is always excess to the primary policy, regardless of the other insurance clauses in the policies." *See* <u>id.</u> at 9 (citing <u>U.S. Fire Ins. Co. v. Aetna Cas. & Sur. Co.</u>, 781 S.W.2d 394 (Tex. App.--Houston [1st Dist.] 1989, no writ).  Assuming contrary to authority that the Pacific Employers Policy can be deemed an "excess" policy merely by virtue of the self-insured retention, *see* footnote 1 at page 3, *supra*, the Court does not read <u>U.S. Fire</u> to support this bright-line rule. *See* <u>id.</u> at 398 (excess umbrella policy does *not* "auto-matically overlay[ ] every applicable primary policy that contains an 'other insurance' clause;" rather, "*[t]he outcome depends on the wording of the umbrella policy.*") (emphasis added).  In any event, it is not necessary for the Court to base its decision on the "overall pattern of insurance coverage" because there is no conflict between the policies or the clauses at issue.

to both its named insured, Best Buy, and its additional insured, The Centre, and the Travelers Policy, "written specifically" for excess coverage under these circumstances, is excess to the Pacific Employers Policy.   Travelers is therefore entitled as subrogee to recover from Pacific Employers the costs paid to settle claims asserted against The Centre in the Underlying Action.

C.   Defense Costs

Under Texas law, the duty to defend is contractual, and "[t]he insurer's liability is determined by the terms of the policy." Daca, Inc. v. Commonwealth Land Title Ins. Co., 822 S.W.2d 360, 364 (Tex. App.--Houston [1st Dist.] 1992, writ denied).   *See also* Southstar Corp. v. St. Paul Surplus Lines Ins. Co., 42 S.W.3d 187, 193 (Tex. App.--Corpus Christi 2001, no pet.) ("[T]he obligation of an insurer to defend the insured is based on contractual liability assumed under the terms of an insurance policy.") (quoting 46 TEX. JUR. 3d, Ins. Contracts and Coverage § 1016, at 547 (1995)). Pacific Employers contends that its Policy contains a clause to exclude any obligation to provide a defense to its insureds. However, the policy clause relied upon by Pacific Employers was expressly "replaced in its entirety" by the "Loss Adjustment Expense" endorsement to the Pacific Employers Policy.   Thus, Pacific Employers's argument is entirely without merit because it is premised on a clause that was deleted from the Policy.   The

19

Policy endorsement that does apply provides that "[t]his policy does not apply to defense, investigation, prejudgment interest or other legal expenses, *other than* '*loss adjustment expense*', arising out of any 'occurrence' or offense."  *See* id. at PEIC 0210.  The endorsement defines the "loss adjustment expense" to which the Policy does apply as follows:

> 22.  "Loss adjustment expense" means such claim[,] expenses and costs incurred by the insured or by us in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" to which this policy applies.  Such expenses include, but are not limited to, attorneys' fees for claims in suit, court costs and related costs . . . .

See id. ¶ 22.  The endorsement also provides that the "'[l]oss adjustment expense' shall be included within the 'retained limit.'" *See* id. ¶ 16.

The Policy coverage therefore includes attorneys' fees and expenses incurred over Best Buy's retained limit, which includes those attorneys' fees and expenses incurred by The Centre to defend itself in the Underlying Schneider Lawsuit.  Accordingly, Travelers as subrogee is entitled to recover the attorneys' fees and expenses incurred in defending The Centre in the Underlying Action.

20

IV.   <u>Order</u>

Accordingly, it is

ORDERED that Defendant Pacific Employers Insurance Company's Motion for Summary Judgment (Document No. 26) is DENIED.  It is further

ORDERED that Plaintiff Travelers Lloyds Insurance Company's Cross-Motion for Summary Judgment (Document No. 41) is GRANTED, and it is DECLARED that Pacific Employers Insurance Company has a legal duty to defend and indemnify The Centre against the claims asserted against the Centre at Bunker Hill in the underlying state court action, <u>Scott Schneider, et al. v. Best Buy Co., Inc., et al.</u>, Cause No. 2003-04887, in excess of the $200,000 self-insured retention that Best Buy has absorbed, and to reimburse Plaintiff Travelers Lloyds Insurance Company as subrogee for the costs of settling the claims against The Centre together with its attorneys' fees and expenses incurred in defending the underlying state court action.  It is further

ORDERED that within ten (10) days after the entry of this Order the parties shall jointly advise the Court what sum should be adjudged in favor of Plaintiff to reimburse it for the costs of settlement, attorneys' fees, and expenses in accordance with the foregoing Memorandum and Order or, if that sum is not agreed (which stipulation on damages, if made, shall be without prejudice to Defendants' right to appeal from the Final Judgment on the

21

liability holding herein), what fact issue(s) on damages remains to be tried.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 11th day of January, 2007.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

22